UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY CHAMOGA WEBB,

               Plaintiff,          Civil Action No. 16-12761
                                              Honorable Stephen J. Murphy, III
v.                                         Magistrate Judge David R. Grand

MOHAMAD BAZZY, ANDREW
SHEPHERD, PATRICK CECILE,
and BRIAN WILLIAMS,

               Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [23]

    This is a civil rights action brought pursuant to 42 U.S.C. § 1983, in which Plaintiff Terry Webb ("Webb") alleges that he was subjected to excessive force during the course of his arrest on July 28, 2014. At the time of the incident in question, Defendants Mohamad Bazzy, Andrew Shepherd, Patrick Cecile, and Brian Williams (collectively "Defendants") were all Wayne State University ("WSU") police officers.[1]

    On June 22, 2017, Defendants filed a motion for summary judgment. (Doc. #23). Webb filed a response in opposition to this motion on July 12, 2017 (Doc. #24), and Defendants filed a reply on July 25, 2017 (Doc. #28). The Court held oral argument on Defendants' motion on September 8, 2017.[2]

**I.    RECOMMENDATION**

---

[1] Also named as a defendant was WSU police officer Collin Rose. (Doc. #1). Officer Rose was killed in the line of duty on November 23, 2016. Defendants served a Notice of Death on Webb on November 28, 2016 (Doc. #20), and Webb did not make a filing pursuant to Fed. R. Civ. P. 25(a)(1). Consequently, Officer Rose is no longer a party to this action.

[2] An Order of Reference was entered on August 17, 2016, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #9).

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**Doc. #23**) be **GRANTED IN PART** and **DENIED IN PART**.

## II.  REPORT

### A.  Factual Background

On July 28, 2014, Webb attended a neighborhood picnic with friends on Peterboro Street in Detroit, Michigan. (Doc. #23 at Ex. A, pp. 25-26). At approximately 6:00 p.m., Webb and his friend, Lopiccolo Miles ("Miles"), left the picnic in a vehicle owned by Webb's girlfriend. (*Id.* at Ex. A, pp. 21, 23). Miles was driving, and Webb was riding in the front passenger seat. (*Id.* at Ex. A, pp. 21, 25).

At some point, while driving down Fourth Street in Detroit, Webb and Miles noticed WSU police officer Mohamad Bazzy ("Bazzy"). (*Id.* at Ex. A, p. 26). According to Webb, Officer Bazzy was "harassing four young girls who were innocently riding their bikes through the neighborhood." (Doc. #24 at 6). Miles continued driving down Fourth Street, stopping at a stop sign at the corner of Fourth and Grand River. (Doc. #23 at Ex. A, p. 27). At that point, Miles apparently noticed that Officer Bazzy was behind them. (*Id.*). Webb claims he then told Miles to turn right onto Grand River and pull the car over. (*Id.* at Ex. A, pp. 27-28).

There is no dispute that after Miles pulled over, Webb immediately got out of the vehicle and asked Officer Bazzy, "Why are you harassing us, we haven't did nothing." (*Id.* at Ex. A, p. 29). Officer Bazzy responded by telling Webb to "get back in the car." (*Id.*). Webb admits that he disregarded Officer Bazzy's command and proceeded to sit on the trunk of the car.[3] (*Id.*). At that point, Officer Bazzy drew his gun and called for backup. (*Id.* at Ex. A, pp. 30, 63; Ex. B, p. 1). Webb then reached his hand into his pocket – he claims to take out his cell phone to record

---

[3] According to Webb, he sat on the trunk of the vehicle in the hope that the camera on Officer Bazzy's car – if there was one – would record their interaction. (Doc. #23 at Ex. A, p. 29).

the encounter – but Officer Bazzy told him to "put it up." (*Id.* at Ex. A, p. 30). Officer Bazzy then re-holstered his gun and attempted to detain Webb, but he claims that Webb "resisted detainment and arrest by pushing [and] pulling away" from him. (Doc. #23 at 11).

At that point, Officer Rose arrived at the scene and "dove on" Webb, in an attempt to assist Officer Bazzy in detaining Webb. (*Id.* at Ex. A, p. 30). Webb testified at his deposition that, when Officer Rose dove on him, he fell on his arms and they were trapped underneath him as a result. (*Id.* at Ex. A, p. 33). During the course of the scuffle, Officers Bazzy and Rose both tried to pull Webb's arms out from under him. (*Id.*). At some point, the remaining defendants – Officers Shepherd, Cecile, and Williams – arrived on the scene and tried to assist in restraining Webb. (*Id.* at Ex. B, pp. 1-2). Defendant Bazzy then delivered a knee strike to Webb's right ribs and struck Webb in the ribs with a closed fist, which Webb alleges caused him to defecate on himself. (*Id.* at Ex. A, pp. 32, 35; Ex. B, p. 1). Subsequently, Webb was pepper sprayed, and his hands were finally placed behind his back. (*Id.* at Ex. A, pp. 34-35).

Webb was placed in the back of Officer Shepherd's police vehicle, while the car he had been riding in was searched, and a bag of marijuana was found. (*Id.* at Ex. A, pp. 50-51; Ex. B, p. 2). Officer Shepherd then drove Webb to the WSU Police Department Headquarters for processing, where he was able to clean up and discard his soiled underwear. (*Id.* at Ex. A, p. 36). While at headquarters, Webb complained of rib pain, so he was transported to Detroit Receiving Hospital, where x-rays showed no broken or fractured ribs and he was discharged. (*Id.* at Ex. A, pp. 36-37; Doc. #24 at Ex. D, p. 4). Webb was then charged with two counts of assaulting, resisting, and obstructing a police officer and one count of possession of marijuana. (*Id.* at Ex. J, p. 5). Subsequently, Webb pled guilty to assaulting, resisting, and obstructing a police officer.

On July 26, 2016, Webb filed the instant lawsuit, alleging that Defendants used excessive

3

force during the course of his arrest, in violation of the Fourth Amendment.[4] (Doc. #1). Defendants now move for summary judgment, arguing that Webb's claim is barred by qualified immunity. (Doc. #23).

### B. Standard of Review

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

In this case, Defendants assert that they are entitled to qualified immunity from Webb's § 1983 excessive force claim. (Doc. #23 at 15-24). The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right

---

[4] In his complaint, Webb also asserted a claim for illegal search and seizure in violation of the Fourth Amendment. (Doc. #1). Defendants moved for summary judgment on that claim as well. (Doc. #23). In response, Webb indicated that, after considering Defendants' arguments and researching the case law, he would "not move forward with his Illegal Search and Seizure and false arrest claims." (Doc. #24 at 18). Thus, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment (**Doc. #23**) be **GRANTED IN PART** as to Webb's illegal search and seizure claim.

and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). A plaintiff must satisfy both of these prongs, but the Court may take up the questions in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (*abrogating in part Saucier*, 533 U.S. at 201). Moreover, each defendant's liability "must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

The qualified immunity defense may be raised at any stage of the case. Where, as here, it is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *See Scott v. Harris*, 550 U.S. 372, 377-78 (2007). For the most part, in qualified immunity cases, "this usually means adopting … the plaintiff's version of the facts." *Id.* at 378.

**C. Analysis**

*1. Legal Standards Applicable to Excessive Force Claims*

Under the Fourth Amendment, a police officer may use only such force as is objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (internal quotations and citation omitted). Determining whether there has been a Fourth Amendment violation by an individual officer requires consideration of "(1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee." *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008) (citing *Graham*, 490 U.S. at 396). "The Court should judge the lawfulness of the conduct from the 'perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.'" *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).

Moreover, to determine whether the amount of force exerted by a police officer is excessive, a court must "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

Moreover, if multiple officers are alleged to have violated a plaintiff's Fourth Amendment rights, "[t]he conduct of each individual defendant must be examined separately when determining whether the defendant violated the constitution and whether the defendant nonetheless is entitled to qualified immunity." *Williams v. Collins*, 2017 WL 1196114, at *5 (S.D. Ohio Mar. 31, 2017) (citing *Binay*, 601 F.3d at 650). To hold an individual police officer liable for the use of excessive force in violation of the Fourth Amendment, a plaintiff must show that the officer: "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay*, 601 F.3d at 650 (internal quotations omitted). "As a general rule, mere presence at the scene of [the alleged constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Id.* (internal quotations omitted). With these legal standards in mind, the Court will now analyze Webb's claims against each of the defendant officers.

2. *Defendant Bazzy*

In this case, Webb alleges that, after Officer Rose "dove on" him and took him to the ground,[5] Officer Bazzy used excessive force by delivering a knee strike and/or closed fist strike to his ribs (causing him to defecate on himself), and by pepper spraying him in the face without

---

[5] Webb also asserts that Officer Rose used excessive force when he "dove on" Webb. (Doc. #24 at 8). Because Officer Rose is no longer a defendant in this matter, however, the Court need not determine whether that action constituted excessive force.

warning. (Doc. #24 at 8). Analyzing Webb's allegations, as well as the evidence of record, in light of the three factors set forth in *Graham*, the Court concludes that Webb's excessive force claim against Officer Bazzy survives summary judgment.

With respect to the first factor, the facts – taken in the light most favorable to Webb – establish that, at the time Webb was first taken to the ground (by Officer Rose), and subsequently struck in the ribs and pepper sprayed (by Officer Bazzy), Webb was not involved in a serious crime. Officer Bazzy indicated that he initiated the traffic stop at issue because the car in which Webb was a passenger was "leaving a high narcotic area," "driving at a speed greater th[a]n posted," and "ba[re]ly coming to a complete stop at the stop signs."[6] (Doc. #24 at Ex. B, p. 1; Ex. E pp. 16-17).

Defendants argue that the crimes involved in this case were "severe" because Webb was eventually charged with two felony counts of assaulting/resisting a police officer, as well as possession of marijuana. (Doc. #23 at 17). But, this conflates the analysis: Defendants' assertion that Webb was resisting arrest goes to the third factor, not the first. At the time Officer Bazzy initiated the traffic stop, Webb was merely a passenger in a car that was, at most, speeding away from a high narcotic area. Thus, Defendants have not demonstrated that Webb was engaged in a particularly "serious" crime at the time of the stop. And, although Webb later disobeyed Bazzy's order to get off the car, there is no suggestion that Webb's disobedience constituted a "serious" crime. Thus, the first *Graham* factor favors denying summary judgment.

With respect to the second *Graham* factor, Defendants assert that they believed Webb "posed a threat to the officers involved, and possibly the community." (Doc. #23 at 17). Specifically, Defendants argue:

---

[6] Whether "barely" or not, Officer Bazzy's admission that the car came to "a complete stop" at stop signs belies any suggestion of a high-speed chase or attempt to flee.

> After the stop occurred, Plaintiff abruptly emerged from the vehicle and sat on the trunk of his car, staring at Defendant Bazzy. Plaintiff refused to return to the inside of the vehicle after being instructed to do so multiple times by Defendant Bazzy. Plaintiff then proceeded to reach into his pocket. Defendant Bazzy made a split second decision to detain Plaintiff after observing Plaintiff reaching in his pocket. However, Plaintiff began resisting. In light of Plaintiff's suspicious behavior of exiting a vehicle when he was not instructed to, his refusal to return to the vehicle when ordered to return, coupled with the threatening behavior of reaching into his pocket, it is objectively reasonable that a police officer would feel his safety, and possibly the safety of others, was threatened in that moment, warranting additional reasonable force.

(*Id.* (internal citations omitted)). The problem, however, is that Officer Bazzy's own deposition testimony calls into question the assertions made by Defendants in their motion. For example, Officer Bazzy testified that Webb "[c]asually" got out of the vehicle. (Doc. #24 at Ex. E, p. 27). He further testified that, while Webb was standing at the rear of the vehicle, he did not advance on Officer Bazzy but, rather, "just stood there" after being told to get back in the car. (*Id.* at Ex. E, p. 28). Indeed, although Defendants characterize Webb's behavior of reaching into his pocket as "threatening," Officer Bazzy admitted at his deposition that, after initially drawing his weapon when Webb reached into his pocket, he subsequently re-holstered his gun because he could see that Webb's hands were empty. (*Id.* at Ex. E, p. 32). Thus, taking the facts in the light most favorable to Webb, where Webb was unarmed and Officer Bazzy felt secure enough to re-holster his gun, there is at least a question of fact as to whether Bazzy reasonably perceived sufficient danger to the arresting officers or to the community at large to engage in the conduct of which he is accused.

Finally, Defendants argue that the third *Graham* factor weighs in their favor because Webb was resisting arrest, both by refusing orders to get back inside the vehicle, and by refusing

orders to place his hands behind his back.[7] (Doc. #23 at 17). In evaluating this third *Graham* factor, however, courts focus on whether plaintiffs are *actively* or *passively* resisting arrest. *See Eldridge v. City of Warren*, 533 F. App'x 529, 534-35 (6th Cir. 2013). According to the Sixth Circuit, active resistance "can take the form of 'verbal hostility' or 'a deliberate act of defiance'"; in contrast, passive resistance includes the refusal to comply with orders and is "not sufficient to legitimize the officers' use of force." *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015) (quoting *Eldridge*, 533 F. App'x at 534-35).

In this case, Defendants argue that Webb was actively resisting arrest because he engaged in deliberate acts of defiance "by refusing Officer Bazzy's instruction to get back into the car and refusing to give the officers his arms to allow them to handcuff him." (Doc. #28 at 5). Indeed, the defendant officers testified that Webb was pushing and pulling away from them, trying to hide his hands, while they were trying to handcuff him. (Doc. #24 at Ex. E, p. 35 (Officer Bazzy's testimony that Webb began to "push and pull away" when he was "[t]rying to grab his hands and put them into handcuffs"); Ex. F, pp. 16, 20 (Officer Cecile's testimony that Webb "wouldn't give his hands from underneath his chest" and was "actively tightening up" in an attempt to avoid being handcuffed); Ex. H, p. 28 (Officer Shepherd's testimony that Webb repeatedly pulled his hands away to avoid being handcuffed)).

If this was in fact the case, Webb's conduct could be viewed as actively resisting arrest, as the Sixth Circuit has held a "'deliberate act of defiance' using one's body can constitute active

---

[7] Defendants also argue that Webb's subsequent guilty plea to resisting and obstructing a police officer establishes the objective reasonableness of their use of force. (Doc. #23 at 17). Defendants cite no case law in support of this proposition, however. And, courts in this district have held that an individual can still proceed with an excessive force claim under § 1983 after pleading guilty to resisting or obstructing arrest, as Webb did here. *See, e.g., Carter v. Carter*, 2017 WL 1160623, at *8-9 (E.D. Mich. Mar. 29, 2017) (collecting cases). Thus, this argument is without merit.

9

resistance, such as where a suspect resist[s] arrest by 'laying down on the pavement and deliberately locking his arms together tightly under his body while kicking and screaming.'" *Goodwin*, 781 F.3d at 326 (quoting *Eldridge*, 533 F. App'x at 534-35). For example, in *Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015), police arrested a suspect for driving with a suspended license. The suspect initially refused the arresting officer's instruction to place his hands on his truck, and the suspect twice jerked his hands away from the officer. *Id.* at 640. The suspect then "ball[ed] up" and admittedly refused to allow the officer to handcuff him. *Id.* After the first officer delivered an unsuccessful knee strike, another officer warned the suspect that he would be tased if he did not comply. When the suspect ignored the warning, he was tased. The Sixth Circuit found no constitutional violation, noting, "When a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Id.* at 642.

In other cases, courts have similarly held that, if a suspect is actively resisting arrest and refusing to be handcuffed, officers do not violate the Fourth Amendment by using force to subdue him. *See, e.g., Jackson v. Washtenaw Cnty.*, 678 F. App'x 302, 307 (6th Cir. 2017) ("We have held that a failure to present one's arms to an officer upon request without more is at most passive resistance, but that a physical struggle to maintain control of one's limbs while being placed in handcuffs can be active resistance."); *Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 97 (6th Cir. 2012) (use of taser reasonable where, after two officers wrestled the suspect to the ground, he refused to move his arms from under his body); *Brady v. City of Westland*, 1 F. Supp. 3d 729, 738-39 (E.D. Mich. 2014) (officers entitled to qualified immunity where they knelt on plaintiff's back, punched him in the side with a closed fist, and tased him when he "continually attempted to pull away from and kick the Defendant officers, and generally resisted their efforts

to handcuff his arms behind his back").

As this Court recently recognized, however, "Where the basic facts that bear on the immunity defense – such as whether the plaintiff 'actively resisted' officers, or offered no resistance – are hotly disputed, and where the record evidence could support either side's story, judgment as a matter of law on qualified immunity is precluded." *Hermiz v. Budzynowski*, 2017 WL 2546793, at *10 (E.D. Mich. June 13, 2017). In this case, Webb argues that he was *not* refusing commands to present his hands to be handcuffed; instead, he claims that, when Officer Rose tackled him to the ground, he fell on his arms and they became trapped under his body. (Doc. #23 at Ex. A, p. 33). Webb further testified that he never refused to give his hands to the arresting officers or tried to pull his arms away from them, saying he simply could not do so because his arms were pinned beneath him. (*Id.* at Ex. A, pp. 59, 63). Again, Defendants dispute Webb's testimony, arguing that the fact that Webb presented his hands after the knee strike was administered shows that he could have done so at any point, but simply chose not to. (Doc. #28 at 3). But, the question of which version of events to believe is fundamentally a question for the jury. Here, at the summary judgment stage, taking the facts in the light most favorable to Webb, a reasonable juror could conclude that Webb was not actively resisting arrest at the time the force was applied.[8]

Moreover, even if consideration of the *Graham* factors did compel a conclusion that *some* amount of force was justified, a jury could reasonably conclude that the amount of force used by

---

[8] Defendants also argue that Webb's refusal to get back in the car, as well as his verbal hostility (in accusing Officer Bazzy of harassment), are further evidence of active resistance. (Doc. #28 at 4-5). Again, however, Webb's version of the facts differs from that of the defendant officers: he testified that he merely sat passively on the trunk of the car, telling Officer Bazzy, "[I]f I get back in the car, I'm going to have to get out anyways." (Doc. #23 at Ex. A, p. 29). Accepting the facts in the light most favorable to Webb, the Court cannot conclude as a matter of law that these actions amounted to actively resisting arrest.

Officer Bazzy was disproportionate to what little resistance Webb displayed. In assessing the proportionality of force administered, the relevant factors include, but are not limited to, "the need for the force, the degree of force applied, the injuries inflicted, and totality of the circumstances surrounding the use of force." *Landis v. Baker*, 297 F. App'x 453, 462 (6th Cir. 2008). In this case, taking the facts in the light most favorable to Webb, any resistance he may have exhibited was far from aggressive; indeed, viewed in this light the record suggests that Webb, at least to Officer Bazzy's knowledge, was not engaged in any criminal conduct prior to the car he was in being pulled over, and that Webb did not display any threatening behavior, did not attempt to flee, and did not have a weapon. Nonetheless, Officers Rose and/or Bazzy allegedly took Webb to the ground, administered a knee strike and closed fist strike to his ribs, and administered pepper spray to his face without warning. As a result of this force, Webb defecated on himself, sustained scrapes to his elbows and hands, and suffered rib injuries that resulted in two trips to the emergency room. Considering the totality of the circumstances, a reasonable jury could conclude that the force used was excessive.[9]

For all of these reasons, viewing the facts in the light most favorable to Webb, which the Court is required to do at the summary judgment stage, a reasonable juror could conclude that Officer Bazzy used excessive force in his attempts to subdue and handcuff Webb. The right to be free from such gratuitous acts of excessive force was clearly established at the time of the events in question. *See Correa v. Simone*, 528 F. App'x 531, 535 (6th Cir. 2013) (the right to be free from physical force when one is not resisting the police is a clearly established right). Thus,

---

[9] Elsewhere in their motion, Defendants argue that summary judgment is warranted because Webb admitted at his deposition that he did not know exactly what force was administered by each officer. (Doc. #23 at 22). At least with respect to Officer Bazzy, however, this argument is without merit, as Officer Bazzy stated in his report: "I delivered a knee str[i]k[e] to the upper side just above the pelvic region and a closed fist strike to the same area." (*Id.* at Ex. B, p. 1). Officer Bazzy further admitted to using pepper spray on Webb. (*Id.* at Ex. B, p. 2).

Webb's excessive force claim against Officer Bazzy is not barred by qualified immunity, and summary judgment should be denied as to this claim.

### 3. *Defendants Cecile, Shepherd, and Williams*

As set forth above, Webb asserts that Officers Bazzy and Rose actually administered the force at issue, and there is no evidence that Officers Cecile, Shepherd, and Williams actively participated in the use of force. If an officer does not directly participate in the challenged conduct, "there must be a showing that they either supervised the [officers] who did so or owed [the plaintiff] a duty of protection." *Burgess*, 735 F.3d at 475. Here, where there is no indication that Officers Cecile, Shepherd, or Williams supervised either Officers Bazzy or Rose, Webb must establish that these three officers owed him a duty of protection.

To establish that an officer not directly involved owed a duty of protection, it must be shown that the officer "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring." *Id.* (internal quotations omitted). In determining whether an officer had both the opportunity and the means to intervene, the Court must determine that the incident being challenged lasted long enough for the officers to "both perceive what was going on and intercede to stop it." *Id.*

In this case, Defendants argue that summary judgment is warranted in favor of Officers Cecile, Shepherd, and Williams because they had no duty to protect Webb against the use of force under the circumstances. (Doc. #23 at 23-24). In this respect, Defendants argue only:

> The two physical acts that Plaintiff identifies that were used against him are a knee strike to the rib cage and being pepper sprayed. As discussed above, these acts are not excessive because Plaintiff was assaulting the officers and resisting arrest. Thus, there was no need for any officer to intervene on behalf of Plaintiff, because he was not subjected to excessive force.

(*Id.* (internal citations omitted); *see also* Doc. #28 at 6 ("Absent proof of excessive force there

can be no duty to intervene. Since there was no excessive force, Defendants [Cecile, Shepherd, and Williams] had no duty to intervene . . .")). Defendants' argument is circular: Officers Cecile, Shepherd, and Williams had no duty to protect Webb against the use of excessive force because no excessive force was used. As set forth above, however, a reasonable jury could conclude that the force administered was excessive. Accordingly, the argument advanced by these Defendants does not entitle them to summary judgment.

## III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**Doc. #23**) be **GRANTED IN PART**, as to Webb's claim of illegal search and seizure, and **DENIED IN PART**, as to Webb's claim of excessive force.

Dated: November 16, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 16, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
